IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stroll to the Polls, Inc.<br>Plaintiff,<br>v.<br>Alpha Kappa Alpha Sorority<br>Defendant. | Civil Action: |

**COMPLAINT AND JURY DEMAND**

Plaintiff Stroll to the Polls, Inc. ("**Plaintiff**" or "**STTP**"), with knowledge as to its own conduct and upon information and belief as to the conduct of all others hereby complains against Defendant Alpha Kappa Alpha Sorority ("**Defendant**") as follows:

**SUMMARY AND NATURE OF THE ACTION**

1. This action seeks (i) relief from the Defendant's ultra vires acts before the United States Trademark Trial and Appeal Board (TTAB); (ii) a determination that Defendant has abandoned any use of the Stroll to the Polls mark; (iii) reversal of the TTAB's decision related to entitlement; and (iv) reversal of the TTAB's decision related to Section 45 of the Trademark Act, 15 U.S.C. § 1127.

**THE PARTIES**

2. Plaintiff STTP is a non-profit existing under the laws of the State of New York with an address of 2266 Fifth Avenue, 728, New York, NY 10037.

3. On information and belief, Defendant Alpha Kappa Alpha Sorority is a nonprofit corporation organized under the laws of the District of Columbia with an address of 5656 S. Stony Island Avenue, Chicago, IL60637.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) because this action arises under an Act of Congress relating to trademarks, as it involves the Defendant's (i) ultra vires acts before the TTAB; (ii) trademark abandonment by the Defendant; (iii) entitlement to oppose Plaintiff's registration of the Plaintiff's Mark; and (iv) review of the TTAB decision related to Section 45 of the Trademark Act, 15 U.S.C. § 1127.

5. This Court also has supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1338(b) over all non-federal claims, because they are related to the claims arising under federal law. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

6. Personal jurisdiction over Defendant is proper pursuant to N.Y. C.P.L.R. §302(a). On information and belief, Defendant has advertised and solicited business in the State of New York and this District through its website. Further, on information and belief, Defendant has wrongfully caused injury to Plaintiff and its property in the State of New York and this District, and personal jurisdiction over Defendant is reasonable and comports with fair play and substantial justice.

## HISTORY; FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. <u>The United States Trademark Trial and Appeal Board (TTAB) Proceedings – A Frame of Reference</u>

7. This action follows an opposition proceeding before the TTAB (Opposition No, 91267937). In the proceeding, Plaintiff filed original and amended answers and Defendant filed an original and amended pleadings.

8. In the decision, the TTAB found that "the phrase "Stroll to the Polls" is merely informational in nature and conveys the sentiment of walking, stepping or dancing to the polls

together in an effort to encourage voter turnout. Consumers understand such a widely used, commonplace phrase as conveying the ordinary concept or sentiment normally associated with it, rather than serving any source-indicating function."

9. However, as it relates to the Plaintiff's Mark, there is no inherent connection between the goods, which are essentially clothing, and the mark STROLL TO THE POLLS ("**Plaintiff's Mark**"). Clothing is "made," "designed" or "manufactured." The display of the mark on the specimen of record is used in a manner to indicate source identification, insomuch as the mark appears on the inside collar of the article of clothing and the Plaintiff has applied for a standard character mark.




10. On information and belief, the TTAB failed to adequately consider Plaintiff's evidence of its use of Plaintiff's Mark as a source-identifying mark in Class 25 and instead the TTAB conflated its analysis of Plaintiff's use in Class 25 against long abandoned use by the Defendant and third parties. In addition, the TTAB failed to follow its own precedents - In re Volvo Cars of North America, Inc., 46 USPQ2d 1455, 1458 (TTAB 1998); In re The Signal Companies, Inc., 228 USPQ 956, 957 (TTAB 1986); and In re Remington Products Inc., 3 USPQ2d 1714, 1715 (TTAB 1987)..

11. Here, Plaintiff submits that its use of Plaintiff's Mark is in a manner calculated to project to purchasers and/or potential purchasers a single source or origin for the goods/services. As indicated in the argument(s) asserted by Plaintiff during the TTAB

proceeding, there is a clear source of origin for the Plaintiff's Mark that Plaintiff has promoted its mark to a large and sophisticated consumer base in order to connect the mark directly to Plaintiff as the sole emanating source, and therefore, Plaintiff's Mark has a distinguished source/origin, functions as a trademark, and cannot be labeled as a commonplace or informational phrase in Class 25. Notably, through plaintiff's top-level domain name strolltothepolls.org as well as registry with the global leader in commerce, Amazon, since 2020.

12. Plaintiff's domain name currently serves as a marketing tool for Plaintiff's existing and intended users.

13. In addition to its domain name, Plaintiff markets its services under Plaintiff's Mark in various ways, including through digital media, participation in commercial events, word of mouth, and via its email signature and letterhead. Notably, @strolltothepolls on Facebook; Instagram; and TikTok as well as "Stroll to the Polls" in Amazon's Brand Registry.

14. On information and belief, the TTAB failed to adequately consider Plaintiff's evidence of Defendant's abandonment of any use of the Stroll to the Polls mark.

15. On information and belief, the TTAB failed to adequately consider Plaintiff's evidence of Defendant's lack of entitlement in the TTAB proceeding – especially considering Defendant's abandonment of use of Plaintiff's Mark.

16. On information and belief, the TTAB failed to adequately consider the Defendant's ultra vires acts before the TTAB.

17. On information and belief, the TTAB erred in conflating its analysis of Plaintiff's Class 25 mark with a review of International Classes 35, 36, and 42, which were not at issue in the proceeding before the TTAB.

## B. **Plaintiff and the Origins of the Plaintiff's Mark**

18. The Plaintiff is the owner and successor-in-interest to the trademark Plaintiff's Mark and Application Serial No. 90012428 (the "**Plaintiff's Application**"). The Plaintiff is a New York State Not-for-Profit Corporation which is formed as a charitable corporation.

19. The TTAB proceeding **solely** concerned a dispute regarding Plaintiff's Mark in connection with "Aprons; Bibs, not of paper; Bodysuits; Dresses; Footwear; Hats; Jackets and socks; Pants; Shirts; Skirts; Swimwear" under International Class 25 (the "**Plaintiff's Goods**"). The Plaintiff's Application was filed on June 20, 2020, with a date of first use in commerce of 2018.

## C. **Defendant**

20. On information and belief, Defendant's Constitution and Bylaws, as the organization's internal governance laws, are the controlling authorities with respect to the authorized activities as well as the management and affairs of Alpha Kappa Alpha Sorority, Incorporated.

21. On information and belief, the initiation and prosecution of legal proceedings are squarely within the purview of the management and internal affairs of the Defendant which must be authorized by the Defendant's Boule or Directorate.

22. The Defendant presented no evidence that the TTAB proceeding was authorized by the Boule or the Directorate. In addition, as testified by Dr. Barrett during her deposition, she does not know who approved of the filing of the TTAB proceeding in the name of Alpha Kappa Alpha Sorority.

23. On information and belief, neither the International President and CEO, Executive Director, or Deputy Executive Director on her own can initiate a legal proceeding.

24. On information and belief, the Defendant's Constitution ("Constitution") provides that the Directorate has the power to conduct the business of Defendant.

25. On information and belief, the Defendant's Bylaws ("Bylaws") provide that the Directorate deliberates on all policies and problems of the organization; approves the proposed program of the Boule; administers the business of the Sorority when the Boule is not in session; and presents its recommendations to the Boule for action.

26. On information and belief, the Bylaws provide that the Supreme Basileus (International President) presides at all meetings of the Boule and the Directorate and that the program of the Boule is prepared under her direction.

27. On information and belief, the Bylaws provide that the Supreme Tamiouchos (International Treasurer) monitors all receipts and expenditures of the Sorority.

28. On information and belief, Dr. Nicole Barrett (Dr. Barrett) is not a voting member of the Defendant's Directorate and has never served as the Supreme Basileus, Supreme Anti-Basileus (International Vice President), or Supreme Tamiouchos of the Defendant.

29. On information and belief, Cynthia D. Howell was not a voting member of the Defendant's Directorate and has never served as the Supreme Basileus, Supreme Anti-Basileus, or Supreme Tamiouchos of Alpha Kappa Alpha Sorority, Incorporated.

30. On information and belief, the Constitution and Bylaws of the Defendant require that members of the Defendant's Directorate deliberate with respect to all policies and problems of the organization; approves the proposed program of the Boule; and administers the business of the Sorority when the Boule is not in session.

31. As testified by Dr. Barrett, neither the Defendant's Directorate, Boule, former Executive Director, nor current Interim Executive Director, authorized her to answer questions about the organization and practices of the Defendant.

32. As testified by Dr. Barrett, the current International President and CEO authorized her to answer questions about the organization and practices of the Defendant.

33. On information and belief, the Defendant's Constitution and Bylaws, as the organization's internal governance laws, are the controlling authorities with respect to the authorized activities as well as the management and affairs of Defendant.

34. On information and belief, the initiation and prosecution of legal proceeding are squarely within the purview of the management and internal affairs of the Defendant which must be authorized by the Defendant's Boule or Directorate.

35. On information and belief, neither the International President and CEO, Executive Director, or Deputy Executive Director on her own can initiate a legal proceeding.

36. On information and belief, the Alpha Kappa Alpha Sorority, Incorporated Bylaws ("Bylaws") provide that the Directorate deliberates on all policies and problems of the organization; approves the proposed program of the Boule; administers the business of the Sorority when the Boule is not in session; and presents its recommendations to the Boule for action. (See Second Notice of Reliance, Exhibit A)

37. On information and belief, the Bylaws provide that the Supreme Basileus presides at all meetings of the Boule and the Directorate and that the program of the Boule is prepared under her direction. (See Second Notice of Reliance, Exhibits A and B)

38. On information and belief, Dr. Nicole Barrett (Dr. Barrett) is not a voting member of the Alpha Kappa Alpha Sorority, Incorporated Directorate and has never served as the Supreme Basileus, Supreme Anti-Basileus, or Supreme Tamiouchos of Alpha Kappa Alpha Sorority, Incorporated (See First Notice of Reliance, Exhibit B, p. 8, lines 6 – 20).

39. On information and belief, Cynthia D. Howell is not a voting member of the Alpha Kappa Alpha Sorority, Incorporated Directorate and has never served as the Supreme Basileus, Supreme Anti-Basileus, or Supreme Tamiouchos of Alpha Kappa Alpha Sorority, Incorporated (see 28 TTABVUE 32).

40. On information and belief, the Constitution and Bylaws of the Alpha Kappa Alpha Sorority, Incorporated that require that members of the Alpha Kappa Alpha Sorority, Incorporated Directorate deliberate with respect to all policies and problems of the organization; approves the proposed program of the Boule; and administers the business of the Sorority when the Boule is not in session. (See Second Notice of Reliance, Exhibit A)

41. On information and belief, the Manual of Standard Procedure ("Manual") of the Alpha Kappa Alpha Sorority, Incorporated provides that the specific purpose of the Manual is "to clarify the procedures that enable the membership to execute the regulations contained in the Constitution and Bylaws." (See Second Notice of Reliance, Exhibit B)

42. On information and belief, the Manual further provides that:

> In those instances where it is feasible or necessary to present detailed procedures, the Manual expands on features related to operations within the Sorority, based on the Constitution and Bylaws to which it is subordinate.
>
> The Manual of Standard Procedure is designed to be used in conjunction with the Constitution and Bylaws.
>
> The rank order of authority of Alpha Kappa Alpha Sorority, Incorporated documents is as follows:
>
> Constitution and Bylaws
> Manual of Standard Procedure

43. On information and belief, the Manual further provides that:

> The executive power of Alpha Kappa Alpha Sorority, Incorporated lies in the Boule. This body has final authority in all policy decisions and adjudications. The Boule has delegated powers to the Directorate to administer the business of the Sorority when the Boule is not in session.

44. Defendant is the prototypical intermeddler and had no "real interest" in the outcome of the proceeding because Defendant had not presented properly authenticated business records or produced its alleged authorized vendor as a witness as proof that it had used or is using Plaintiff's Mark to identify goods in commerce in Class 25. Instead, Defendant has presented a trial affidavit where its witness, Dr. Nicole Barrett, conveniently changed her previous sworn testimony (See pages 11-15 below) to state that an authorized vendor began selling apparel on March 1, 2020, shirts with the Plaintiff's Mark.

45. Dr. Barrett's claim that its vendor began selling apparel using Plaintiff's Mark in March 2020 is contrary to that vendor's public pronouncements. As indicated in the posts below, those dates are after the filing of Plaintiff's Application.

https://www.facebook.com/ivystorehouse/photos/pb.100064382211652.-2207520000/3267079853335268/ 11/27/2023

facebook

Log In




**Ivy Storehouse**
August 16, 2020 · Instagram ·

**See more of Ivy Storehouse on Facebook**

Log In or Create new account

https://www.facebook.com/ivystorehouse/photos/a.1725511610825441/3398742660168986/ 11/27/2023

facebook

Log In



**Ivy Storehouse**
September 28, 2020 · Instagram ·

'Im convinced that we Black women possess a special indestructible strength that allows us to not only get down, but to get up, to get through, and to get to 'power!'' Time to stroll to the polls. 📷:

**See more of Ivy Storehouse on Facebook**

Log In or Create new account

https://www.facebook.com/ivystorehouse/photos/pb.100064382211652.-2207520000/3495887093787875/ 11/27/2023




46. In addition, to the extent Defendant had any prior use of Plaintiff's Mark, it has moved on. In fact, during her deposition, Dr. Barrett affirmed that the current International President and CEO unveiled Defendant's 2022-2026 program under the theme "***Soaring to Greater Heights of Service and Sisterhood***". In connection therewith and during the pendency of this proceeding, Defendant announced its program as "***Soar to the Polls***" and registered the design mark "***Soar to the Polls It's a Serious Matter***." Accordingly, if used at all, Defendant has now abandoned any such uses of the wording "***Stroll to the Polls***."

47. Defendant's Constitution and Bylaws govern certain activities of the organization and establish certain protocols that must be followed when exercising certain corporate powers. During the TTAB proceeding, the Defendant admitted, "the Alpha Kappa Alpha Sorority, Incorporated Constitution provides that the Directorate shall have the power to conduct the business of the Sorority when the Boule is not in session." During the TTAB proceeding, Defendant presented no documentary evidence that the Alpha Kappa Alpha Sorority, Incorporated Directorate

has had continuous use of Plaintiff's Mark.

48. Even if there was use sufficient to support this proceeding at one time in the past, on information and belief, Defendant has not used the wording "Stroll to the Polls" for clothing or any other goods for a period of more than three years prior hereto and there appears to be no intent to resume any such prior use.

49. Plaintiff asserts that the Defendant engaged in ultra vires acts before the TTAB. During the proceeding, the Defendant submitted evidence that the proceeding was not authorized in accordance with the Defendant's procedures. Notably, during the Plaintiff's deposition of Defendant's witness, under penalty of perjury, Dr. Nicole Barrett responded as follows:

Dr. Barrett's Responses During Deposition

**QUESTION**: As you look at page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories," can you confirm that the signature on page 15 of Appendix D is your signature? (83 TTABVUE 54-55)

**RESPONSE**:
BY THE WITNESS:
A. Yes. (83 TTABVUE 55)

**QUESTION**: To your knowledge, did the 30th International President and CEO as well as 31st Supreme Basileus of Alpha Kappa Alpha Sorority, Incorporated, Dr. Glenda Glover, approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 55)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 55)

**QUESTION**: To your knowledge, did the 31st International President and CEO as well as 31st Supreme Basileus of Alpha Kappa Alpha Sorority, Incorporated, Danette Anthony Reed, approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 55)

**RESPONSE**:

MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 56)

**QUESTION**: To your knowledge, did the Alpha Kappa Alpha Sorority, Incorporated Directorate approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 56)

**RESPONSE**:

MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 56)

**QUESTION**: To your knowledge, did the voting members of the Boule of Alpha Kappa Alpha Sorority, Incorporated approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 56)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 56)

**QUESTION**: To your knowledge, did the former Executive Director of Alpha Kappa Alpha Sorority, Incorporated, Cynthia Howell, approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 57)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 57)

**QUESTION**: To your knowledge, did Interim Executive Director of Alpha Kappa Alpha Sorority, Incorporated, Jacquelyn Lewis Young, approve your signing the Verification on page 15 of the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories" in Appendix D? (83 TTABVUE 57)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 57)

**QUESTION**: To your knowledge, did the 30th International President and CEO as well as 31st Supreme Basileus of Alpha Kappa Alpha Sorority, Incorporated, Dr. Glenda Glover, approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 59)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 59)

**QUESTION**: To your knowledge, did the 31st International President and CEO as well as 31st Supreme Basileus of Alpha Kappa Alpha Sorority, Incorporated, Danette Anthony Reed, approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 59)

**RESPONSE**:

MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 60)

**QUESTION**: To your knowledge, did the Directorate of Alpha Kappa Alpha Sorority, Incorporated approve the submission of documents AKA00000789-806 in Appendix D in Response to Interrogatory No. 31? (83 TTABVUE 60)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I do not know. (83 TTABVUE 60)

**QUESTION**: To your knowledge, did the voting members of the Boule of Alpha Kappa Alpha Sorority, Incorporated approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 60)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I don't know. (83 TTABVUE 60)

**QUESTION**: To your knowledge, did the former Executive Director of Alpha Kappa Alpha Sorority, Incorporated, Cynthia Howell, approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 61)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I don't know. (83 TTABVUE 61)

**QUESTION**: To your knowledge, did the Interim Executive Director of Alpha Kappa Alpha Sorority, Incorporated, Jacquelyn Lewis Young, approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 61)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. I don't know. (83 TTABVUE 61)

**QUESTION**: To your knowledge, did you approve the submission of documents AKA00000789-806 in Appendix D in the Defendant's response to Interrogatory No. 31? (83 TTABVUE 61)

**RESPONSE**:
MS. EKHOFF: Objection. · Assumes facts not in evidence and relevance.
BY THE WITNESS:
A. Yes. (83 TTABVUE 62)

**QUESTION**: ·To your knowledge, did Cynthia Howell furnish the information identified in the Defendant's response to Interrogatory No. 31 as documents AKA00000789-806? (83

TTABVUE 62)

**RESPONSE**:
BY THE WITNESS:
A. Excuse me. I don't know. (83 TTABVUE 62)

**QUESTION**: To your knowledge, did Twyla Woods-Buford furnish the information identified in the Defendant's response to Interrogatory No. 31 as documents AKA00000789-806? (83 TTABVUE 62)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 62)

**QUESTION**: To your knowledge, did Sylvia Blackmon-Roberts furnish the information identified in the Defendant's response to Interrogatory No. 31 as documents AKA00000789-806? (83 TTABVUE 63)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 63)

**QUESTION**: To your knowledge, did you furnish the information identified in the Defendant's response to Interrogatory No. 31 as documents AKA00000789-806? (83 TTABVUE 63)

**RESPONSE**:
BY THE WITNESS:
A. No, I did not. (83 TTABVUE 63)

**QUESTION**: To your knowledge, who at the Defendant furnished the information identified in the Defendant's response to Interrogatory No. 31 as documents AKA00000789-806? (83 TTABVUE 63)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 63)

**QUESTION**: Looking at Defendant's response to Interrogatory No. 31, to your knowledge, did the Defendant directly sell the t-shirts worn by the people pictured in documents AKA00000789-806? (83 TTABVUE 63)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 63)

**QUESTION**: If the Defendant did not directly sell the t- shirts worn by the people pictured in documents AKA00000789-806, does the Defendant have evidence of Defendant's use in interstate commerce of the Stroll to The Polls mark for Class 25 goods in the Defendant's name? (83 TTABVUE 63)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 63)

**QUESTION**: Do you recognize Appendix E as one of the documents submitted with the document entitled "Defendant's Response to Plaintiff's First Set of Interrogatories"? (83 TTABVUE 64)

**RESPONSE**:
BY THE WITNESS:
A. I remember the picture. (83 TTABVUE 64)

**QUESTION**: To your knowledge, did the Defendant directly sell the t-shirt worn by the person in Appendix E? (83 TTABVUE 64)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 64)

**QUESTION**: If the Defendant directly sold the t-shirt worn by the person in Appendix E, what was the date of the transaction? (83 TTABVUE 64)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 64)

**QUESTION**: If the Defendant directly sold the t-shirt worn by the person in Appendix E, what was the name of the buyer of the t-shirt shown in Appendix E? (83 TTABVUE 65)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 65)

**QUESTION**: If the Defendant directly sold the t-shirt worn by the person in Appendix E, was the t-shirt sold in-person, via the internet or by mail? (83 TTABVUE 65)

**RESPONSE**:
BY THE WITNESS:
A. I don't know. (83 TTABVUE 65)

**QUESTION**: If the Defendant did not directly sell the t-shirt worn by the person in Appendix E, what is the name of the entity that sold the t-shirt? (83 TTABVUE 65)

**RESPONSE**:
MS. EKHOFF: Objection. · Calls for a legal conclusion.
BY THE WITNESS:
A. I don't know. (83 TTABVUE 65)

**QUESTION**: If the Defendant did not directly sell the t-shirt worn by the person in Appendix E, is the entity that sold the t-shirt a not-for-profit company? (83 TTABVUE 65)

**RESPONSE**:
MS. EKHOFF: Objection. · Relevance.
BY THE WITNESS:
A. I don't know. (83 TTABVUE 65)

## CLAIMS

### FIRST CLAIM
### (Ultra Vires Acts before the TTAB)

50. Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully forth herein.

51. Defendant's actions described above are ultra vires under the Defendant's Constitution and Bylaws.

52. As set forth above, during the TTAB proceeding, the Defendant's own witness, Dr. Barrett testified, in sum, that she had no knowledge of whether the TTAB proceeding was authorized in accordance with the Defendant's procedures.

53. Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff's brand, business, and goodwill, as represented by the Plaintiff's Mark unless enjoined by this Court.

54. Defendant's ultra vires acts are exceptional as Defendant has been aware of its ultra vires acts since at least 2020. As a result of Defendant's exceptional and willful violations of its own procedures, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

### SECOND CLAIM
### (Defendant Lacks Entitlement)

55. Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

56. Since 2022, the Defendant had marketed its voter engagement initiative as “Soar to the Polls.”







As such, Defendant has not demonstrated a real interest in the proceeding and a reasonable belief of damage. Because Defendant established its own initiative in 2022, the Defendant did not and cannot establish that it is likely that to be somehow damaged if Plaintiff’s registration were granted.

57. Defendant's willful pursuit of the TTAB proceeding where it was aware that had no real interest because it had established a different initiative has harmed Plaintiff.

58. Because of Defendant's willful pursuit of the TTAB proceeding when it established a different initiative since at least 2022, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

**THIRD CLAIM**
**(Defendant Abandoned of any use of the Plaintiff's Mark)**

59. Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

60. In addition to the Defendant marketing its social impact initiative as "Soar to the Polls" since 2022, the Defendant. in connection therewith and during the pendency of the TTAB proceeding, the Defendant registered the design mark "Soar to the Polls It's a Serious Matter"



United States of America
United States Patent and Trademark Office



Reg. No. 7,390,472
Registered May 21, 2024
Int. Cl.: 16, 35
Service Mark
Trademark
Principal Register

Alpha Kappa Alpha Sorority (DISTRICT OF COLUMBIA non profit corporation)
5656 S. Stony Island Avenue
Chicago, ILLINOIS 60637

CLASS 16: printed matter, namely, pamphlets and books featuring information about voting and graphics to encourage others to vote

FIRST USE 10-10-2022; IN COMMERCE 10-10-2022

CLASS 35: providing information on how to create a voting plan and checklist for the purpose of knowing how to register voters

FIRST USE 10-10-2022; IN COMMERCE 10-10-2022

The color(s) pink and green is/are claimed as a feature of the mark.

The mark consists of the word "SOAR" positioned center above the words " TO THE POLLS" and to the right of "SOAR" are the words "ITS A SERIOUS MATTER" all words in green, and a pink arrow which tail starts from the center of "THE" and extends in an upward arc to the right of "its a serious matter".

SER. NO. 97-722,458, FILED 12-19-2022

Katherine Kelly Vidal
Director of the United States
Patent and Trademark Office

(Accessed September 18, 2025

Accordingly, if used at all, Defendant has now abandoned any such uses of the wording "Stroll to the Polls". As a non-profit organization, the Plaintiff does not engage in politics.

61. Because of Defendant's willful pursuit of the TTAB proceeding when it established a different initiative since at least 2022, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

**FOURTH CLAIM**
**(Plaintiff's Mark Functions as a Trademark)**

62. The TTAB erred in finding that the Plaintiff's Mark is merely an informational message and fails to function as a mark.

63. Plaintiff respectfully and strongly disagrees with the TTAB's analysis. Rather, Plaintiff is the clear and distinguishable source of origin for Plaintiff's Mark and Plaintiff's Goods. Plaintiff has been well-known as the source of Plaintiff's Mark for Plaintiff's Goods since at least as early as 2018. In addition, since 2020, Amazon, the largest online retailer in the world, has recognized Plaintiff as the source of Plaintiff's Mark for Plaintiff's Goods.




(Accessed September 18, 2025

64. The primary inquiry to determine trademark functionality is whether the mark is associated with a particular source by the ultimate consumer. According to eMarketer, many consumers view Amazon as a trusted starting point for shopping (https://www.emarketer.com/content/do-most-searchers-really-start-on-amazon).

65. Plaintiff's Mark's designation in the Amazon Brand Registry substantiates its functionality as a mark.

66. As such, Plaintiff respectfully requests that the TTAB's decision related to Section 45 of the Trademark Act be reversed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor as follows:

A. Reverse the TTAB's decision with respect to failure to function as a mark.

B. Declare that Defendant's unauthorized conduct under its Constitution and Bylaws is ultra vires.

C. Declare that Defendant had no real interest in the opposition proceeding before the TTAB.

D. Declare that Defendant has abandoned any use of Plaintiff's Mark.

E. Immediately and permanently enjoin Defendant, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them from:

I. otherwise competing unfairly with Plaintiff in any manner.

II. aiding any other party in engaging in any acts prohibited by this paragraph; and

III. continuing to perform in any manner whatsoever any of the other acts

complained of in this Complaint.

F. Order that Defendant, pursuant to 15 U.S.C. §1116, serve on Plaintiff within thirty (30) days after service on Defendant of the requested mandatory permanent, or preliminary injunction orders, a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction(s).

G. Order Defendant to pay Plaintiff enhanced damages for their oppression, malice, and gross negligence, whether grounded on proof of actual damages incurred by Plaintiff or on proof of Defendant's unjust enrichment which are presumed willful under 15 U.S.C. §1117(e) for the purposes of Defendant's Lanham Act violations.

H. Award Plaintiff its costs and disbursement incurred in connection with this action, as well as in connection with the proceeding in the USPTO in connection with the previous opposition proceeding, including all costs, attorneys' fees and expenses, on the ground that this is an exceptional case under 15 U.S.C. §1117; and

I. Award Plaintiff such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury of all issues triable of right by jury.

Respectfully submitted,

Dated: September 18, 2025

By: /s/Nima Farris

Nima Farris
Director
Stroll to the Polls, Inc.
2266 Fifth Ave., 728
New York, NY 10037
ip@strolltothepolls.org

PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the **COMPLAINT AND JURY DEMAND** has been served on Defendant **(**Alpha Kappa Alpha Sorority) by delivering the document via email to Defendant's Attorney:

Jessica A Ekhoff
Pattishall Mcauliff Newbury Hilliard & Geraldson LLP
200 South Wacker Drive Suite 2900
Chicago, IL 60606
jae@pattishall.com, fgt@pattishall.com, pam@pattishall.com

Dated: September 18, 2025

By: /s/Nima Farris
Nima Farris
Director
Stroll to the Polls, Inc.
2266 Fifth Ave., 728
New York, NY 10037
ip@strolltothepolls.org

PLAINTIFF