# EXHIBIT C

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Mailed: July 17, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*Alpha Kappa Alpha Sorority*
*v.*
*Stroll to the Polls, Inc.*

Opposition No. 91267937

Jessica A. Ekhoff and Felicia G. Traub of Pattishall McAuliff Newbury Hilliard & Geraldson LLP, for Alpha Kappa Alpha Sorority.

Willard A. Stanback of Willard Alonzo Stanback PC, for Stroll to the Polls, Inc.

Before Zervas, Goodman, and Allard, Administrative Trademark Judges.

Opinion by Allard, Administrative Trademark Judge:

Stroll to the Polls, Inc. ("Applicant") seeks registration on the Principal Register of the mark STROLL TO THE POLLS (in standard characters) for "Aprons; Bibs, not of paper; Bodysuits; Dresses; Footwear; Hats; Jackets and socks; Pants; Shirts; Skirts; Swimwear," in International Class 25.[1]

[1] Application Serial No. 90012428 filed on June 20, 2020, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1052(a), based upon Applicant's claim of first use anywhere and use in commerce since 2018.

In the original notice of opposition, Alpha Kappa Alpha Sorority ("Opposer") opposed registration of Applicant's mark on the grounds of (1) likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on its prior use of the mark STROLL TO THE POLLS in connection with its voter engagement and registration efforts; (2) fraud; and (3) failure to function as a mark under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, because (a) the proposed mark is "an informational political message that is not capable of indicating source" and (b) it is merely ornamental.[2]

In its July 16, 2021 Order, the Board granted Applicant's motion to dismiss Opposer's fraud claim for failure to state a claim, but otherwise denied the motion.[3] Opposer was allowed an opportunity to replead its claim of fraud, but the deadline for filing its amended notice of opposition passed without such an amendment.

Applicant subsequently filed its answer to the original notice of opposition, denying its salient allegations and asserting various affirmative defenses, not all of which are true affirmative defenses: waiver, estoppel, laches, acquiescence, unclean hands, failure to state a claim, and reservation of rights to assert other defenses.[4]

Opposer subsequently amended its notice of opposition. As amended, the sole pleaded claim is that Applicant's mark fails to function as a mark "because it provides

---

[2] 1 TTABVUE.

Citations to the record and briefs reference TTABVUE, the Board's online docket system. Before the TTABVUE designation is the docket entry number; after this designation are the page references or paragraph numbers, as applicable.

[3] 4, 8 TTABVUE.

[4] 14 TTABVUE.

an information[al] political message that is not capable of indicating source … [and,] as applied to the apparel products, also is merely ornamental."[5]

In its corresponding answer, Applicant denied the salient allegations and asserted a number of self-styled affirmative defenses, only some of which are true affirmative defenses.[6] Applicant later moved to amend its answer,[7] but the Board, in its Order dated January 31, 2024, denied Applicant's motion, confirmed that Applicant's original answer to the first amended notice of opposition remained the responsive pleading, and sua sponte struck the affirmative defenses set out in it, including the affirmative defense of unclean hands,[8] which Applicant nonetheless pursued at trial.[9]

The case is fully briefed.[10] Opposer, as plaintiff in this proceeding, bears the burden of establishing its entitlement to bring a statutory cause of action and its claim by a preponderance of the evidence. *See Univ. of Kentucky v. 40-0, LLC*, Opp.

---

[5] 23 TTABVUE 4 (paras. 11, 12). Opposer attached various exhibits to its First Amended Notice of Opposition. 23 TTABVUE 8-42. With the exception of a registration owned by the plaintiff on which it relies for its claims (an exception not applicable here), exhibits to pleadings are not evidence and will not be considered unless they are properly introduced in evidence. *Flame & Wax, Inc. v. Laguna Candles, LLC*, Canc. No. 92072343, 2022 TTAB LEXIS 272, at *2 n.3 (TTAB 2022) (citing Trademark Rule 2.122(c), 37 C.F.R. § 2.122(c)). We have not considered, therefore, the exhibits submitted with the First Amended Notice of Opposition.

[6] 26 TTABVUE.

[7] 61 TTABVUE.

[8] 70 TTABVUE 3-9.

[9] 94 TTABVUE 14.

[10] Opposer's brief appears at 93 TTABVUE and its rebuttal appears at 98 TTABVUE. Applicant's corrected brief appears at 95 TTABVUE, which supersedes Applicant's originally-filed brief (94 TTABVUE).

No. 91224310, 2021 TTAB LEXIS 68, at *21, 42 (TTAB 2021). For the reasons discussed below, we sustain the opposition.

## I. Evidentiary Matters

Before proceeding to the merits of the refusal, we address the evidentiary issues raised in the appendix to Applicant's brief.[11]

### A. Opposer's Trial Exhibits 1-7

First, Applicant objects to Opposer's Trial Exhibits 1-7, all of which consist of documents relating to Opposer's "Be the Voice" campaign or other documentary evidence of Opposer's display of the phrase "Stroll to the Polls." Applicant asserts that each exhibit should be struck because in each case, Opposer is "rel[ying] on its own answers[.]"[12] However, none of these objected-to documents is an "answer"; rather each exhibit is a document that was produced by Opposer and properly made of record through the testimony declaration of Dr. Nicole Barrett. *See generally*, Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 702.02 (2025) ("Documents and other exhibits may be made of record with appropriate identification and introduction by the witness during the course of the testimony deposition or in a testimony affidavit or declaration.") and authorities cited therein. Accordingly, we overrule Applicant's objection.

---

[11] 95 TTABVUE 17-20.

[12] 95 TTABVUE 17-18. Opposer's trial exhibits can be found at 71 TTABVUE 4-71 (public)/72 TTABVUE (confidential).

### B. Opposer's Trial Exhibit 5

Second, Applicant objects to Opposer's Trial Exhibit 5 on an additional ground: that it was not produced by Opposer prior to the close of discovery.[13] In its reply brief, Opposer counters that this document was produced on August 5, 2022, well before the close of discovery on September 23, 2022, as set out in the scheduling portion of the Board's order.[14] To support its position, Opposer attaches the Declaration of Jessica Ekhoff stating the same.[15] Consequently, Opposer argues, Applicant's objection has no merit.[16]

We need not consider the declaration of Opposer's counsel because we find Applicant's objection to be insufficient. The objection, which is conclusory and devoid of all detail, is also unsupported by any evidence. Because there is simply no evidence to support Applicant's objection, we overrule it. *See Cai v. Diamond Hong*, 901 F.3d 1367, 1371 (Fed. Cir. 2018) ("Attorney argument is no substitute for evidence.") (quoting *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005)).

### C. Testimony Declaration of Priestly Johnson

Third, Applicant requests that the trial testimony declaration of Priestly Johnson, the Director of Strategic Community Partnerships at When We All Vote, a project of Civic Nation, be stricken because Opposer failed to produce Ms. Johnson for the

---

[13] 95 TTABVUE 19.

[14] 98 TTABVUE 13-14; 31 TTABVUE 12.

[15] 98 TTABVUE 16.

[16] 98 TTABVUE 14.

noticed deposition.[17] Opposer acknowledges that Ms. Johnson could not be reached to schedule her deposition and, as a result, Opposer did not rely on her trial testimony declaration in its trial brief, "meaning there is nothing to strike."[18] Because Opposer did not rely on Ms. Johnson's trial testimony in its brief, we acknowledge that there is no corresponding portion of Opposer's brief to strike, for example, but we agree with Applicant that her testimony should be stricken and do so here.

## II. The Record

The record consists of the pleadings,[19] and, by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), the file history of the involved application.

In addition, Opposer introduced the following evidence:

- Trial Testimony of Dr. Nicole Barrett, Deputy Director of Opposer, and related exhibits ("Test. Decl. Barrett").[20]

- Notice of Reliance on (1) the file histories of three of Applicant's applications to register the mark STROLL TO THE POLLS (Ser. Nos. 90248099, 90975234, and 90975235), each of which was previously refused on the ground that it fails to function as a mark;[21] and (2) third-party uses of the phrase "stroll to the polls."[22]

---

[17] 95 TTABVUE 20. Ms. Johnson's trial testimony appears at 77 TTABVUE.

[18] 98 TTABVUE 14.

[19] The operative pleadings are the First Amended Notice of Opposition and the Answer to the First Amended Notice of Opposition. 23, 26 TTABVUE.

[20] 71 TTABVUE (public)/72 TTABVUE (confidential).

We refer to information filed under seal in a manner sufficient to explain the basis of our decision to the parties, readers of this opinion, and any reviewing court. *See e.g., Noble House Home Furnishings, LLC v. Floorco Enters., LLC*, Can. No. 92057394, 2016 TTAB LEXIS 100, at *11 n.21 (TTAB 2016).

[21] 73 TTABVUE 6-296 (Exhibits 8-10).

[22] 73 TTABVUE 297-379 (Exhibits 11-16); 74 TTABVUE 2-208 (Exhibits 17-28).

- Trial Testimony Declaration of Dorcas E. Washington, Executive Director of Delta Sigma Sorority, Inc., and related exhibits ("Test. Decl. Washington").[23]

- Testimony Declaration of Dr. Erin Sylvester Philpot, Assistant Director for Leadership & Identity at Florida State University ("FSU") ("Test. Decl. Philpot"), and related exhibits.[24]

During its trial testimony period, Applicant made of record the following evidence:

- First Notice of Reliance on (1) select filings from the file history of the involved application;[25] and (2) the transcript of the discovery deposition of Dr. Nicole Barrett, Deputy Director of Opposer, taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.[26]

- Second Notice of Reliance on (1) Internet website printouts and social media posts; and (2) file wrapper for Trademark Reg. No. 6324665 for the mark BLACK GREEK FESTIVAL.[27]

- Third Notice of Reliance on (1) transcript of the deposition of Dorcas Washington, Executive Director of Delta Signa Theta Sorority, Inc.; (2) transcript of the deposition of Dr. Erin Sylvester Philpot, Assistant Director for Leadership & Identity at Florida State University; and (3) a TSDR (Trademark Status and Document Retrieval database) printout for the mark SOAR TO THE POLLS IT'S A SERIOUS MATTER and Design (Reg. No. 7390472) and select filings from the application file history.[28]

---

[23] 75 TTABVUE.

[24] 76 TTABVUE. Dr. Philpot's title subsequently changed to Assistant Director for Leadership, dropping the "& Identity" portion. 92 TTABVUE 245 (Depo. Tr. Philpot, 32:4-9).

We previously struck the trial Declaration of Priestly Johnson (77 TTABVUE). *See* discussion *supra* Section I(C).

[25] 82 TTABVUE 6-24. The Notice of Reliance coversheet mistakenly indicates that the documents relate to application Serial No. 88953368; however, the exhibit itself recites the serial number of the opposed application. Regardless, the file history of the opposed application is automatically of record by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), and, as a result, it was unnecessary to make it of record under a notice of reliance.

[26] 82 TTABVUE 25-26 (public)/83 TTABVUE (confidential).

[27] 84 TTABVUE.

[28] 92 TTABVUE.

- Testimony Declaration of Ramona Prioleau, founder of Applicant, and related exhibits ("Test. Decl. Prioleau").[29]

## III. Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action must be established by the plaintiff in every inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373-74 (Fed. Cir. 2020). To establish entitlement to bring a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute, and (ii) a reasonable belief in damage proximately caused by registration of the mark. *See Corcamore*, 978 F.3d at 1303 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-33, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)).

Opposer believes it would be damaged by Applicant's registration of the proposed mark for t-shirts on the Principal Register because the registration would impair Opposer's right to use the term on t-shirts and to promote its voter-turnout events.[30] To establish that it has sold t-shirts bearing the proposed mark, Opposer introduced the trial testimony of Dr. Nicole Barrett, its Deputy Director, who testified that "[Opposer's] authorized distributors began selling apparel bearing the phrase 'Stroll to the Polls. It's a Serious Matter.' … at least as early as March 1, 2020."[31] Images of sorority members wearing t-shirts with the phrase in Opposer's signature pink and

---

[29] 85 TTABVUE (public)/86 TTABVUE (confidential).

[30] 93 TTABVUE 19-20.

[31] 71 TTABVUE 3 (para. 8)

green color combination are attached to her declaration and discussed in more detail herein.[32] Use of the phrase by Opposer in connection with voter-turnout events is also of record.[33]

Applicant counters that "Opposer is the prototypical intermeddler and has no 'real interest' in the outcome of the proceeding because Opposer has not presented properly authenticated business records or produced its alleged authorized vendor as a witness as proof that it has used or is using Applicant's Mark to identify goods in commerce in Class 25."[34] According to Applicant, this alleged failure is because "Opposer's [sic] has presented a trial affidavit where its witness, Dr. Nicole Barrett, [Opposer's Deputy Director,] conveniently changes her previous sworn testimony to state that an authorized vendor began selling apparel on March 1, 2020 shirts with the Applicant's Mark."[35] To the extent that Applicant offers support for its argument, it cites "pages 5-8 above" (even though this language appears on page 6 of its brief), but those pages do not contain any references to Dr. Barrett's deposition testimony, so it is not clear why Applicant claims Dr. Barrett's deposition testimony contradicts her trial declaration and, in light of our review of Dr. Barrett's deposition testimony, we find none.[36]

---

[32] 71 TTABVUE 3, 53-70 (para. 8 and Exhibit 7).

[33] 71 TTABVUE 2-3, 4-51 (paras. 3-7 and Exhibits 1-6).

[34] 95 TTABVUE 7.

[35] 95 TTABVUE 7.

[36] The deposition testimony of Dr. Barrett appears at 82 TTABVUE 25-26 (public)/83 TTABVUE 26-111.

Applicant also argues that Opposer's entitlement, which Applicant characterizes as based in part on use of the proposed mark by the National Pan-Hellenic Council ("NPHC"),[37] is unpersuasive. Opposer makes no such arguments. Opposer's entitlement is based, as discussed above, on its past and prospective display of the proposed mark on t-shirts and in connection with its voter-turnout events. Opposer simply does not base any of its entitlement arguments on use by the NPHC.

In sum, Dr. Barrett's testimony establishes that Opposer has an interest falling within the zone of interests protected by the statute, i.e., an interest in using the phrase "Stroll to the Polls" on t-shirts at a minimum, and Opposer has a reasonable belief that it would suffer harm proximately caused by registration of Applicant's proposed mark. *See Univ. of Kentucky v. 40-0*, 2021 TTAB LEXIS 68, at *11-21 ("Opposer may prove its entitlement by establishing that it has a present or prospective interest in using the term in its business.").

## IV. Failure to Function

"The Trademark Act is not an act to register mere words, but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words have been so used they cannot qualify." *In re Vox Populi Registry Ltd.*, Ser. No. 86700941, 2020 TTAB LEXIS 465, at *12 (TTAB 2020) (quoting *In re Bose Corp.*, 546 F.2d 893, 896 (CCPA 1976)). An applicant's proposed mark must, by definition, "identify and distinguish his or her goods ... from those manufactured or sold by

[37] 95 TTABVUE 4.

others and ... indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127 (quoted in *In re Texas With Love, LLC*, Ser. No. 87793802, 2020 TTAB LEXIS 466, at *4 (TTAB 2020)). Hence, a proposed trademark is registrable only if it functions as an identifier of the source of the applicant's goods or services. *In re The Ride, LLC*, Ser. No. 86845550, 2020 TTAB LEXIS 2, at *17 (TTAB 2020). "Matter that does not operate to indicate the source or origin of the identified goods or services and distinguish them from those of others does not meet the statutory definition of a trademark and may not be registered ...." *Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *32 (quoting *In re AC Webconnecting Holding B.V.*, Ser. No. 85635277, 2020 TTAB LEXIS 428, at *8-9 (TTAB 2020)).

It is well settled that common laudatory phrases or statements that would ordinarily be used in business or in the particular trade or industry, are not registrable. *See e.g., In re Boston Beer Co. L.P.*, 198 F.3d 1370, 1373-74 (Fed. Cir. 1999). Neither are slogans and other terms that are considered to be merely informational in nature. *See, e.g., Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *39-40 ("We agree with Opposer that Applicant's proposed mark "40-0" is merely informational in nature, expressing support, admiration or affiliation with college basketball teams that either have achieved perfect records in a single season or aspire to do so."). The more commonly a phrase is used, the less likely that the public will use it to identify only one source and the less likely that it will be recognized by purchasers as a trademark. *Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *40. Therefore, the critical inquiry in determining whether a proposed mark functions as

a trademark is how the relevant public perceives the proposed mark. *Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *32; *In re Greenwood*, Ser. No. 87168719, 2020 TTAB LEXIS 499, at *5-6 (TTAB 2020). Because there are no limitations on the channels of trade or classes of consumers of the t-shirts and other apparel items identified in the involved application, the relevant consuming public comprises all potential purchasers of t-shirts and the other identified items of apparel. *Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *33.

In assessing whether the proposed mark functions as a trademark, we consider all the evidence of record, including Applicant's use, Opposer's use, and third-party use of the phrase to determine how consumers are likely to perceive it as used, both in general parlance and on the goods at issue. *Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *33.

As an initial matter, we note that neither party has adduced direct evidence, such as a survey or consumer testimony, concerning whether purchasers perceive "Stroll to the Polls" as a mark or otherwise. The only consumer perception evidence in the record consists of declarations of two third-party witnesses, where both declarants state that they believe the phrase "Stroll to the Polls" is a commonplace slogan and not an indicator that the goods come from a single source.[38] Notably, Applicant does not offer counter testimony on this point.

---

[38] 75 TTABVUE 2 (Test. Decl. Washington, para. 4); 76 TTABVUE 2 (Test. Decl. Philpot, para. 7).

### A. Opposer's Use of "Stroll to the Polls"

Dr. Barrett, Opposer's Deputy Director, testified that "strolling" is a longstanding tradition associated with the "Divine Nine."[39] The Divine Nine refers to the nine African-American fraternity and sorority organizations, of which Opposer is a member.[40] According to Dr. Barrett, "[s]trolling is a dance form that dates back to the early 1900s and proudly showcases African-American culture, harkens back to African roots, and is performed to show camaraderie, community, unity, and love."[41]

According to Dr. Barrett, Opposer has used the involved phrase "in connection with political events, namely, voter engagement initiatives" since as early as 2016.[42] For example, in preparation for the 2016 U.S. presidential election, Opposer launched its "Be the Voice" campaign, the goal of which was to increase voter participation among its sorority members and other members of the African-American community.[43] She explained that one component of the "Be the Voice" campaign was

---

[39] 71 TTABVUE 2 (para. 1, 2).

Although prefaced with "[o]n information and belief," Applicant's founder, Ms. Prioleau, testified that the Divine Nine is composed of the following member organizations: Alpha Phi Alpha Fraternity, Inc.; Alpha Kappa Alpha Sorority, Inc.; Kappa Alpha Psi Fraternity, Inc.; Omega Psi Phi Fraternity, Inc.; Delta Sigma Theta Sorority, Inc.; Phi Beta Sigma Fraternity, Inc.; Zeta Phi Beta Sorority, Inc.; Sigma Gamma Rho Sorority, Inc.; and Iota Phi Theta Fraternity, Inc. 85 TTABVUE 12 (Test. Decl. Prioleau, para. 54).

[40] 71 TTABVUE 2 (para. 2).

[41] *Id.*

[42] *Id.* (para. 3).

[43] *Id.*

"Stroll to the Polls," in which "[Opposer's] college members coordinated with other groups on campus to encourage students to vote."[44]

Opposer continued its "Be the Voice" campaign through the 2018 national mid-term elections.[45] This campaign, with its "Stroll to the Polls" component, was discussed at Opposer's 2018 Regional Conference and included in the conference guide.[46]

Opposer's chapters have also hosted "Stroll to the Polls" events in an effort to increase voter turnout. For example, in October 2020, one of Opposer's chapters in Florida hosted a virtual voter engagement event called "Florida Stroll to the Polls."[47] Opposer's chapter at Adelphi University hosted a voter engagement event called "Stroll to the Polls," where a panel was available for questions about the election and the voting process.[48] And, Opposer held an event called "Stroll to the Polls" at the Metropolitan Parkway Library in Atlanta, Georgia.[49]

As mentioned earlier, Dr. Barrett testified that Opposer's authorized distributors began selling apparel, including t-shirts, bearing the phrase "Stroll to the Polls. It's a Serious Matter," where the phrase appeared in Opposer's signature pink and green color combination.[50] She attached to her testimony declaration photographs of

---

[44] 71 TTABVUE 2 (para. 3), 5-19 (Exhibit 1).

[45] 71 TTABVUE 2 (para. 4).

[46] 71 TTABVUE 2-3 (para. 4), 21-43 (Exhibits 2, 3).

[47] 71 TTABVUE 3 (para. 5), 45 (Exhibit 4).

[48] 71 TTABVUE 3 (para. 6), 47-48 (Exhibit 5).

[49] 71 TTABVUE 3 (para. 7), 50-51 (Exhibit 6).

[50] 71 TTABVUE 3 (para. 8), 53-70 (Exhibit 7).

persons wearing these t-shirts, including some photographs that were picked up by traditional media and social media, the following of which are exemplary.



[51]



[52]

---

[51] 71 TTABVUE 53; 86 TTABVUE 192.

[52] 71 TTABVUE 54.



[53]

[53] 71 TTABVUE 66; 86 TTABVUE 205.

Joe Biden
Yesterday at 9:49 PM ·

From ballot shortages and issues with machines to hours-long lines — what happened today in Georgia should enrage us all. We need to act now to prevent it from happening again in November. Our democracy depends on it.



NYTIMES.COM
**'I Refuse Not to Be Heard': Georgia in Uproar Over Voting Meltdown**

View insights    Boost post [54]

[54] 71 TTABVUE 56; 86 TTABVUE 195.

Forbes Create Account | Sign In

TOPLINE Georgia's first day of early voting on Monday was marked by reports of record turnout and hours-long waits in line, as voters cast ballots for two U.S. Senate races and a tight presidential contest in a once reliably conservative state that has turned competitive.



[55]

### B. Applicant's Use of "Stroll to the Polls"

Ms. Prioleau, Applicant's founder, testified that "Applicant offers the goods identified in [the involved application] under Applicant's Mark."[56] Evidence of use of the proposed mark is, however, limited to t-shirts, where it is displayed on the back of the neck, where a label is traditionally located, and emblazoned across the front.[57]

---

[55] 71 TTABVUE 57; 86 TTABVUE 196.

[56] 85 TTABVUE 2 (Test. Decl. Prioleau, para. 5).

[57] 95 TTABVUE 10; 93 TTABVUE 16-17. The only reference to Applicant's use are the specimens in the application file, and it is well-settled that, although an opposed application is automatically part of the record for the opposition, the specimens contained therein are not evidence of use in any related inter partes proceeding. *See* Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b) ("Specimens in the file of an application for registration, or in the file of a registration, are not evidence on behalf of the applicant or registrant unless identified and introduced in evidence as exhibits during the period for the taking of testimony."). *See also, Baseball Am., Inc. v. Powerplay Sports, Ltd.*, Opp. No. 91120166, 2004 TTAB LEXIS 443, at *10 n.10 (TTAB 2004) (dates of use and specimens not evidence); TBMP § 704.03(a) and

The record also shows that Applicant previously applied to register the phrase "Stroll to the Polls" for the following services: "Promoting public awareness of civic engagement by organizing, arranging, and conducting events that encourage voter registration, mobilization, and participation" in Class 35 (Ser. No. 90248099); "Fundraising services by means of organizing, arranging and conducting fundraising programs for the benefit of voter registration, mobilization and participation programs" in Class 36 (Ser. No. 90975234); and "Providing temporary use of a non-downloadable web application for individuals to encourage voter registration, mobilization and participation among their peers" in Class 42 (Ser. No. 90975235).[58] There is no testimony about the proposed mark with these identified services, and all of these applications now stand abandoned.[59]

### C. Third-Party Use of "Stroll to the Polls"

Dr. Erin Sylvester Philpot, the Assistant Director for Leadership & Identity at Florida State University, who testified generally about consumer perception of the phrase,[60] also testified about FSU's use of the phrase. She explained that in October 2020, FSU, in collaboration with Florida A&M University, the League of Women Voters, Florida PIRG Students, the Campus Election Engagement Project, and the

---

authorities therein. However, because both parties cite to Applicant's specimens as evidence of use, without objection by the other, we consider this evidence for this purpose.

[58] 73 TTABVUE 7-9, 104-06, 201-03.

[59] *Id.*

[60] *See* discussion *supra* Section IV.

Leon County Supervisor of Elections Office, held an event called "Stroll to the Polls."[61] As part of this event, participants met at a central location and then walked together to one of three early voting sites to vote in the 2020 Presidential election.[62]

To promote the event, stickers with the phrase "Stroll to the Polls" were handed out to participants.[63] The phrase was used on graphic artwork, namely, a social media square for posting on Instagram, and the proposed mark was displayed on the event specific website (shown below), which promoted the event and provided, for example, the route map for the day of the program.[64]



[65]

[61] 76 TTABVUE 2 (Test. Decl. Philpot, paras. 1-3).

[62] 76 TTABVUE 2 (Test. Decl. Philpot, para. 3).

[63] 76 TTABVUE 2, 4 (Test. Decl. Philpot, para. 4 and Exhibit 1).

[64] 76 TTABVUE 2, 6-14 (Test. Decl. Philpot, paras. 5-6 and Exhibits 2-3); 92 TTABVUE 229-30, 254 (Depo. Tr. Philpot, 16:12-17:10, 41:12-18).

[65] 76 TTABVUE 8.

Regarding the stickers, Dr. Philpot testified during her deposition that "when we give students stickers, those students usually last for four or five years for us, so we see [the stickers] still."[66]

During her deposition, Dr. Philpot acknowledged that, while the Office of Fraternity/Sorority Life at FAMU "absolutely helped in planning and promoting the event," they ultimately opted not to attend because the event was during the Covid-19 pandemic and there was fear it would be a super-spreader.[67] However, members of other organizations did attend, including FSU, FSU Votes, the League of Women Voters, Florida PIRG, and members of the Campus Election and Engagement Project (CEEP).[68] Although Dr. Philpot initially stated that "tons of different groups showed up," she corrected herself, stating, "I shouldn't say 'tons.'"[69] Then she added that it was "an open event," "promoted widely on our social media and website," and, as a result, "[d]ifferent groups showed up."[70]

Dorcas Washington, the Executive Director at Delta Sigma Theta Sorority, Incorporated, whose testimony regarding consumer perception of the phrase we previously acknowledged,[71] also testified about her sorority's use of the phrase to promote voter-turnout events.[72] In 2012, the phrase was displayed on a flyer

---

[66] 92 TTABVUE 264 (Depo. Tr. Philpot, 51:3-6).

[67] 92 TTABVUE 246 (Depo. Tr. Philpot, 33:3-14).

[68] *Id.* (Depo. Tr. Philpot, 33:15-24).

[69] *Id.* at 247 (Depo. Tr. Philpot, 34:20-23).

[70] *Id.* (Depo. Tr. Philpot, 34:3-9).

[71] *See* discussion *supra* Section IV.

[72] 75 TTABVUE 2 (Test. Decl. Washington, paras. 2-3).

(appearing in two instances); it also appeared on a button, albeit as part of the longer phrase "Let's Stroll to the Polls," both of which are shown below:[73]



[74]

[73] 75 TTABVUE 2, 4-5 (Test. Decl. Washington, para. 3 and Exhibits A and B).

[74] 75 TTABVUE 4 (arrows added).



[75]

Turning to third-party uses of the proposed mark on the goods identified in the involved application, which includes shirts and hats, the record shows that (1) SPREADSHIRT (www.spreadshirt.com) displays it on a baby cap, a ball cap, and t-shirts; (2) REDBUBBLE (www.redbubble.com) applies the phrase to t-shirts, as does (3) BELLA ME EVENTS (www.bellameevents.com), (4) NEEDTHATTEE (www.needthattee.com), (5) RADIO 71 (www.radio71shirt.com), and (6) VECTOR BABES (etsy.com), some of which are shown below:[76]

---

[75] 75 TTABVUE 5.

[76] 73 TTABVUE 298-304, 307, 337.




77




78

77 73 TTABVUE 298.

78 73 TTABVUE 301.




79




80

79 73 TTABVUE 302.

80 73 TTABVUE 307.



81



82

---

81 73 TTABVUE 312.

82 73 TTABVUE 337.




83




84

---

[83] 73 TTABVUE 365.

[84] 73 TTABVUE 313-17.



[85]



[86]

---

[85] 73 TTABVUE 339, 351.

[86] 73 TTABVUE 343.

In addition to display of the involved phrase on clothing, the record shows third-party display of it on print material, on websites, and on social media in connection with voter-turnout related events, some of which we highlight below:

- The League of Women Voters has used the phrase as the name of a voter turnout event.[87]
- An article on the Popsugar website titled "Stroll to the Polls" features two celebrities walking to the polls.[88]
- An article posted to the AZCentral website is titled "Stroll to the Polls in Patagonia celebrates the 100th anniversary of the 19th Amendment."[89]
- An article on The Famuan website is titled "Rattlers take part in 'stroll to the polls,'" which states that "[t]he event was designed to encourage FAMU students to exercise their right to vote."[90]
- The West Virginia Citizen Action Group website promoted its "'Stroll to the Polls: Soul to the Polls' – GOTV March and Voting Event."[91]
- The Grand Street Democrats website posted an article titled "Stroll to the Polls! Vote early with GSD on Sunday, October 25 and Thursday, October 29."[92] Other record evidence shows Grand Street Democrats promoted a

---

[87] 73 TTABVUE 18, 142-45; 74 TTABVUE 101.

[88] 73 TTABVUE 19.

[89] *Id.* at 23.

[90] *Id.* at 31.

[91] *Id.* at 36.

[92] *Id.* at 37.

Stroll to the Polls event in connection with another election—this one on June 12, 2021.[93]

- The Compass website promoted its "Stroll to the Polls" event: "Stroll to the Polls is a strolling competition geared towards one of Alpha Phi Alpha's national programs 'A Voteless People is A Hopeless People.' The event exists to promote voter awareness and education while providing teams the opportunity to demonstrate their strolling abilities."[94]
- The Prince William County Democrats website promoted its "Stroll To The Polls Canvass Launch."[95]
- The Mississippi State University website contains a photo of a student holding up a voting sign with a caption that refers to "the National Panhellenic Council's Election Day 'Stroll to the Polls' event in November."[96]
- Nova Southeastern University hosted an event called "Stroll to the Polls," during which a shuttle bus drove students to voting sites on election day.[97]
- Denver City Park hosted an event called "Stroll to the Polls" to encourage voting.[98]

---

[93] 74 TTABVUE 112.

[94] 73 TTABVUE 40.

[95] *Id.* at 42.

[96] *Id.* at 50.

[97] *Id.* at 54.

[98] *Id.* at 57-58.

- YouTube hosts a video titled "Get Ready to Vote on Election Day w/ 'HBCU Good Trouble Takeover…Walk, Run, Stroll to the Polls.'"[99]
- The University of Rochester encouraged students to "sign up to participate in a 'Stroll to the Polls' … Participants will walk as a group from the River Campus to the early voting location[.]"[100]
- The Power Coalition for Equity & Justice hosted an event called "Stroll to the Polls" and promoted it on its website.[101]
- NBC News posted an article titled "OpEd: Black Women of Ohio, Take a 'Sister Stroll to the Polls.' There is too much at stake for Black women to sit this election out."[102]
- A Shaw University student group hosted an event called "Stroll to the Polls," intended to "encourage the community to exercise their constitutional right to vote."[103]
- The Focus Daily News website posted an article titled "Lancaster Seniors Stroll to the Polls," with a photo caption that describes high school students walking to "the polling location during the school's semi-annual 'Stroll to the Polls' voting event."[104]

---

[99] *Id.* at 59-61.

[100] *Id.* at 62-64.

[101] *Id.* at 65-66.

[102] *Id.* at 68.

[103] *Id.* at 76-78.

[104] *Id.* at 80-82.

- An article on the University of Houston Downtown website is titled "UHD Community to Stroll to the Polls During Oct. 26 'Walk 2 Vote.'"[105]
- The 11 ALIVE news website posted an article titled "Historically Black sororities in Atlanta unite for 'Stroll to the Polls' video, images, now viral" (shown below):[106]


LOCAL NEWS

Historically Black sororities in Atlanta unite for 'Stroll to the Polls' video, images, now viral

Members of the four historically Black sororities came together for the project that grabbed the attention of celebrities and social media



- An article on the Channel 12 news website in North Augusta, SC is titled "Augusta mayor to host National Early Vote and Stroll to the Polls rally."[107]
- An article titled "Four Historically Black Sororities Join Forces for Atlanta 'Stroll to the Polls' Video (Watch)" explains that "Maisha Land, a member

[105] *Id.* at 84.

[106] *Id.* at 95-98.

[107] 74 TTABVUE 83.

of AKA, wanted to build on that historical moment [of AKA Member Kamala Harris becoming the Vice Presidential nominee] with the organization's tradition of strolling, when members of a Divine Nine organization form a line and move forward using the same dance or motions, hence 'Stroll to the Polls.'"[108]

- An Instagram post by a user named @lawyer_gal1908, which features a drawing of representatives of each of the four historically Black sororities, each wearing a differently styled "Stroll to the Polls" t-shirt, wrote "When the elderly White woman at my polling place saw my #pinkandgreen #Vote2020 sweatshirt and did a little dance and started chanting #StrollToThePolls it was the first time I thought there was hope. I said if an elderly White woman in a senior center polling location in my little suburban town knew about 'Strolling to the polls' and did a little dance for me the word was out about the power of Historically Black Sororities and Fraternities!"[109]
- An article in the Milwaukee Courier titled "Stroll to the Polls The Milwaukee Urban League Takes the Lead"[110] contains a photograph with the following caption: "The Milwaukee Urban League and members of the

[108] 74 TTABVUE 91-92.

[109] *Id.* at 140.

[110] *Id.* at 124-29, 138.

Divine 9 joined forces on Saturday, October 24 in Stroll to the Polls event."[111]

We find that, considering the record evidence as a whole, the phrase "Stroll to the Polls" is merely informational in nature and conveys the sentiment of walking, stepping or dancing to the polls together in an effort to encourage voter turnout. Consumers understand such a widely used, commonplace phrase as conveying the ordinary concept or sentiment normally associated with it, rather than serving any source-indicating function. *See, e.g., Univ. of Kentucky*, 2021 TTAB LEXIS 68, at *39-40 ("40-0"); *In re Mayweather Promotions, LLC*, Ser. No. 86753084, 2020 TTAB LEXIS 467, at *3-4 (TTAB 2020) (PAST, PRESENT, FUTURE); *In re Greenwood*, 2020 TTAB LEXIS 499, at *7-10 (GOD BLESS THE USA).

The record shows that the clothing items bearing the proposed mark display the slogan in large, stylized font on the front of the shirt or hat in an ornamental fashion. This supports the notion that consumers are buying the clothing because of the message emblazoned across the front. *See In re Mayweather*, 2020 TTAB LEXIS 467, at *10 ("[T]his common message is used on t-shirts as a feature such that the display itself is an important component of the product and customers purchase the product not associating it with a particular source but because of the message."); *see also D.C. One Wholesaler, Inc. v. Chien*, Opp. No. 91199035, 2016 TTAB LEXIS 536, at *21 (TTAB 2016) ("Because consumers would be accustomed to seeing this phrase …

[111] *Id.*

displayed on clothing items from many different sources, they could not view the slogan as a trademark indicating source of the clothing only in applicant.”).

Applicant maintains that its use of the proposed mark is not informational because “[t]he display of the mark on the specimen of record is used in a manner to indicate source identification, insomuch as the mark appears on the inside collar of the article of clothing[,]”[112] as shown below:




We disagree. In this case, notwithstanding Applicant’s apparent intent that the phrase function as a mark, the evidence of record shows that the proposed mark is a widely-used phrase that merely conveys a well-recognized and commonly expressed sentiment, i.e., walking or strolling to the voting location together to encourage voter turnout. When purchasers buy goods based on the common message they display, that message fails to function as a trademark, even if it is displayed in a conventional trademark manner. *See e.g., In re Team Jesus LLC*, Ser. No. 88105154, 2020 TTAB

[112] 95 TTABVUE 9.

LEXIS 503, at *14 (TTAB 2020) ("Thus, even though Applicant's Class 25 specimen shows its proposed mark on the shirt's outer-neck, this potentially 'non-ornamental manner [of use] that is conventional for the display of trademarks ... does not require a different result [than the failure to function refusal].'") (quoting *D.C. One Wholesaler*, 2016 TTAB LEXIS 536, at *22). Moreover, nothing prevents Applicant from using the term in a location other than the back of a t-shirt, including after registration, if it were successful.

Applicant argues that Opposer "presented improperly authenticated evidence of use by nonparties and non-witnesses to this proceeding without regard to whether the use of Applicant's Mark in Class 25 by others is not related to efforts of the Applicant."[113] This argument also fails. Applicant does not explain why it believes Opposer's evidence of third-party use of the proposed mark was improperly authenticated or point to evidence showing that the third-party uses are related to Applicant. The only evidence Applicant cites in support of its argument is its own Notice of Reliance,[114] which is unpersuasive.

Applicant devotes much of its brief on arguments that Opposer failed to establish priority.[115] However, these arguments are not relevant to the claim of failure to function because priority is not an element of it. While priority is relevant to the issue of likelihood of confusion, Opposer removed its priority and likelihood of confusion

---

[113] 95 TTABVUE 13.

[114] *Id.* (citing 82 TTABVUE 73-74).

[115] 95 TTABVUE 13-15.

claim when it amended its notice of opposition years ago,[116] and it expressly stated in its brief that (1) the issues involve failure to function (not likelihood of confusion and priority), and (2) its operative notice did not include a priority and likelihood of confusion claim.[117]

Finally, Applicant argues, "On information and belief, Opposer did **not** directly sell the items depicted in the documents marked as AKA00000789-806 (86 TTABVUE, Decl. Ex. C, pp. 40-42)."[118] Here, the documents Applicant refers to are photographs of Opposer's members wearing their signature pink and green color t-shirts bearing the proposed mark, some of which are shown herein.[119] Simply put, this argument–made on the basis of "information and belief"–on its face contains a concession that the argument is not supported by evidence and, indeed, Applicant cites to none. Accordingly, we give it no further consideration. *Cai v. Diamond Hong,* 901 F.3d at 1371. Moreover, the issue is not whether Opposer sold the items "directly"

---

[116] 23 TTABVUE.

It has been made clear several times throughout this proceeding that this opposition is not based on priority and likelihood of confusion. In addition to the instances addressed earlier, Applicant also moved for summary judgment, arguing that there was "no genuine issue of material fact as to Applicant's priority of use of Applicant's Mark in Class 25 and that Applicant is accordingly entitled to judgment as a matter of law on that claim." 63 TTABVUE (public)/64 TTABVUE (confidential). In denying Applicant's motion for summary judgment, the Board addressed the fact that here, where plaintiff is alleging failure to function as a mark, plaintiff need not plead or establish priority as an element of that claim. 70 TTABVUE 3.

[117] 93 TTABVUE 9-10 & n.1.

[118] 98 TTABVUE 7 (emphasis in original in bold and underline, bold here).

[119] *See* discussion *supra* Section IV(A).

or otherwise, because with a failure to function claim, the issue is the public exposure to the phrase, which this evidence shows.

## V. Purported Affirmative Defense of Unclean Hands

Although this affirmative defense was struck from Applicant's pleading, it submitted evidence on this issue and argued it in its brief.[120] Opposer, for its part, did not object and addressed the affirmative defense on the merits.[121] As it is addressed by both parties on the merits, we consider it tried by implied consent. *See Conolty v. Conolty O'Connor NYC LLC*, Opp. No. 91206045, 2014 TTAB LEXIS 269, at *6 (TTAB 2014) (matters will be found as having been tried by implied consent when, even if not expressly raised in the pleadings, the parties introduce evidence regarding the unpled matters without objection and discuss the issues relating thereto in their briefs).

Applicant argues that Opposer acted with unclean hands because it "continue[d] its pursuit of this action despite clear evidence that Opposer has not used Applicant's Mark since 2020 and where Opposer has sought and received registration for its political marks during the pendency of this proceeding."[122] Applicant's arguments are unpersuasive and do not support an affirmative defense of unclean hands for several reasons. First, because Opposer's operative pleading does not include a claim of priority and likelihood of confusion, Applicant's argument that Opposer has

---

[120] 82 TTABVUE 3; 84 TTABVUE 2-3.

[121] 98 TTABVUE 10-11.

[122] 95 TTABVUE 15.

abandoned its mark does not support an affirmative defense of unclean hands. Applicant cites to no case for this proposition, nor are we aware of any.

Second, Applicant does not explain or cite to any portion of the record as support for its argument regarding why Opposer's having "sought and received registration for its political marks during the pendency of this proceeding" could possibly be relevant to its unclean hands defense. *Cai v. Diamond Hong*, 901 F.3d at 1371.

Finally, Applicant argues that Opposer has acted with unclean hands because it "failed to prosecute a trademark registrant that has secured registration with the USPTO, using the Opposer's registered marks in its specimens."[123] The third-party registration Applicant points to covers an unrelated mark—the mark BLACK GREEK FESTIVAL. This mark has nothing to do with the issues in the present proceeding, which focus solely on whether the proposed mark "Stroll to the Polls" fails to function as a mark. Applicant's proposed defense apparently alleges misconduct by Opposer in connection with its enforcement (or lack thereof) against a third-party owner of the BLACK GREEK FESTIVAL registration, which is wholly unrelated to Opposer's claims in the present proceeding. Because it is not related, Applicant has, therefore, not asserted a viable affirmative defense of unclean hands. *See Tony Lama Co., Inc. v. Di Stefano*, 92011422, 1980 TTAB LEXIS 6, at *6-7 (TTAB 1980). *See also VIP Foods, Inc. v. V.I.P. Food Prods.*, 1978 TTAB LEXIS 99, at *30 (TTAB 1978) ("It thus seems clear that misconduct in the abstract, unrelated to the claim in which it is asserted as a defense does not constitute unclean hands.").

---

[123] 95 TTABVUE 15 (citing 84 TTABVUE 130-31, 133).

## Decision

The opposition to registration of the proposed mark in Application Serial No. 90012428 is sustained on the ground that the proposed mark is merely an informational message and fails to function as a mark. Because we sustain the opposition on this ground, we need not consider whether the proposed mark also fails because it is used ornamentally. *Cf. Multisorb Techs. Inc. v. Pactiv Corp.*, Can. No. 92054730, 2013 TTAB LEXIS 616, at *7 (TTAB 2013) (rendering judgment on abandonment claim so need not reach the fraud claim).